OPINION
Appellant, Robert Sheriff, appeals the judgment entry of the Portage County Court of Common Pleas, Juvenile Division, placing his biological daughter, Cynthia Haker ("Cynthia"), into the permanent custody of the Portage County Department of Human Services ("PCDHS") for the purpose of adoption, and divesting him of all parental rights.
Cynthia is currently a ten-year old child with severe emotional and behavioral problems resulting from the sexual abuse she suffered from the actions of her stepfather Carl Howell ("Carl"), while living with her mother, Rosemary Haker ("Rosemary"). The record shows that Cynthia had remained in the custody of her mother from her birth on June 13, 1989, until her removal by PCDHS in February 1997, due to sexual abuse, neglect, and dependency problems. Cynthia further suffers from a Depressive Order, Disruptive Behavior Disorder, Attention Deficit Hyper Activity Disorder, Reactive Disorder, and asthma. She also was physically and emotionally abused for a significant period of time, and her cognitive I.Q. has been measured between eighty and sixty-five.
Although appellant has always suspected that he was Cynthia's father, he was not associated as being her biological father until a paternity test, taken at the end of September 1997, indicated such relationship. After being identified as Cynthia's father, appellant was incorporated into PCDHS's "Case Plan" for Cynthia in October 1997. As part of the Case Plan, appellant was ordered to submit to a psychological evaluation and a substance abuse evaluation, and was directed to follow the recommendations of those assessments in a timely manner and keep all appointments. The Case Plan also stated that PCDHS would make all necessary referrals for appellant, and permitted him to have visitation with Cynthia.
In June 1998, appellant was incarcerated for his third DUI offense in five years, his sixth altogether, and was not scheduled for release until June 1999. Additionally, on July 10, 1998, Cynthia's mother, Rosemary, appeared in the Portage County Juvenile Court and executed a permanent surrender of all her parental rights. Consequently, on July 13, 1998, PCDHS moved the trial court for an order granting permanent custody of Cynthia to them pursuant to R.C. 2151.413.
A hearing on PCDHS's motion was held on September 2, 1998. In a judgment entry issued on September 16, 1998, the trial court found that as of the date of the hearing, appellant had not completed either the psychological or substance abuse examinations and missed many appointments with his psychologist without explanation. The trial court further found that appellant failed to visit Cynthia on thirty-seven of forty-three opportunities, admitted to substance abuse, tested positive for cocaine use during one drug screen examination, maintained an income of only $235 per month, lived rent free in his brother's home, and was incarcerated on seven separate occasions. The court additionally determined that appellant has not provided food, shelter, or financial support for Cynthia at any time. Finally, the trial court acknowledged that a home study conducted by representatives of PCDHS concluded that Cynthia should not be placed with appellant due to living conditions.
Based upon the factual evidence presented to it, the trial court found by clear and convincing evidence that: (1) Cynthia was not abandoned or orphaned and could not be placed with either of her parents within a reasonable time and should not be placed with appellant; (2) appellant "failed continuously and repeatedly to substantially remedy the conditions causing [Cynthia] to be placed outside her home"; (3) appellant exhibited a lack of commitment toward Cynthia "by failing to regularly support, visit, or communicate with his child when able to do so and by showing an unwillingness to provide an adequate permanent home" for her; (4) appellant's repeated incarcerations prevented him from parenting and providing care for his daughter; and (5) it was in Cynthia's best interest to be placed in the permanent custody of PCDHS for purposes of adoption. Thus, the court divested appellant of all parental rights.
Importantly, in considering the best interests of Cynthia, the trial court expressly considered her strong bond to her sister, who also will be placed for adoption, the fact that she is a special needs child who suffers from a Post-traumatic Stress Disorder from being sexually molested and abused, and that she had been in a therapeutic foster home since her removal by PCDHS in February 1997. In its best interests evaluation, the court also considered the need for Cynthia to be placed in a stable and secure home environment and the fact that no appropriate relatives had been identified as willing or able to meet her special needs or provide a secure, permanent placement.
On October 13, 1998, appellant filed the instant appeal asserting the following assignments of error:
 "[1.] The trial court erred in terminating [appellant's] parental rights because its determination that Cynthia Haker can not and should not be placed with her father within a reasonable time is not supported by clear and convincing evidence.
 "[2.] The trial court erred in terminating [appellant's] parental rights because the Portage County Department of Human Services did not use reasonable efforts in developing and implementing a case plan that was designed to develop and preserve the parent-child relationship by reinvolving [appellant] in his daughter's life.
 "[3.] The trial court erred in terminating [appellant's] parental rights and granting permanent custody of Cynthia Haker to the Portage County Department of Human Services without fully considering all the relevant factors enumerated in R.C. 2151.41.4(D)."
In the first assignment of error, appellant avers that the trial court erred in terminating his parental rights because the factual record could not satisfy the requirements of R.C. 2151.41.4 by clear and convincing evidence. Specifically, appellant argues that the trial court could not find by clear and convincing evidence that: (1) he continuously and repeatedly failed to remedy the conditions that caused Cynthia to be placed outside her home and that PCDHS used reasonable case planning and diligent efforts to assist him in remedying those problems, (2) he has demonstrated a lack of commitment toward Cynthia, and (3) his repeated incarcerations have prevented him from parenting his daughter.
At the outset of addressing this assignment of error, we note that appellant's line of argumentation challenges the weight given by the trial court to the evidence contained in the record. InGerijo, Inc. v. Fairfield (1994), 70 Ohio St.3d 223, 226, the Supreme Court of Ohio discussed the standard to be applied when an appellate court reviews a manifest weight argument in a civil matter:
 "[J]udgments supported by competent, credible evidence going to all the material elements of the case must not be reversed, as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, * * *, syllabus. We must indulge every reasonable presumption in favor of the lower court's judgment and finding of facts. Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77
* * *. In the event the evidence is susceptible to more than one interpretation, we must construe it consistently with the lower court's judgment. See Ross v. Ross
(1980), 64 Ohio St.2d 203, * * *." (Parallel citations omitted.)
Pertinent to the issues raised in this assignment of error is an understanding of what constitutes "clear and convincing evidence," which has been defined as the degree of proof that "`will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" Ohio State Bar Assn.v. Reid (1999), 85 Ohio St.3d 327, 331, quoting Cross v.Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus. "Clear and convincing evidence" is that degree or measure of proof that is more than a "preponderance of the evidence," but less than the certainty required for a finding of "beyond a reasonable doubt." Id.
Turning to a discussion of the merits of appellant's argument, it is evident that the trial court terminated his parental rights regarding Cynthia pursuant to R.C. 2151.41.4(B)(1), which states:
 "(B) The court may grant permanent custody of a child to a movant if the court determines * * * by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 "(1) The child is not abandoned or orphaned and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; * * *"
R.C. 2151.41.4(E) sets forth the standard that a trial court must satisfy in order to determine whether "a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents." In making its determination, a trial court must consider all relevant evidence and must determine by clear and convincing evidence that one or more of the twelve enumerated factors exist. R.C. 2151.41.4(E). Three of the twelve enumerated factors provide:
 "(1) Following the placement of the child outside the child's home * * * the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties."
"* * *
 "(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
"* * *
 "(8) The parent is repeatedly incarcerated and the repeated incarceration prevents the parent from providing care for the child; * * *."
In the instant matter, the trial court's September 16, 1998 judgment entry reveals that it expressly found that R.C. 2151.41.4(E) was met because the first, fourth, and eighth enumerated elements existed by clear and convincing evidence. In reviewing the first factor, the evidence showed that Cynthia was in need of a secure, stable home environment for her to be placed back in a home with either of her parents, and that appellant had substance abuse problems, maintained an income of only $235 per month, lived rent free in his brother's home, and was not able to provide appropriate food, shelter or financial support for his daughter. Additionally, a home study by PCDHS indicated that the living conditions in appellant's home were inadequate. Finally, appellant failed to complete mandatory psychological and substance abuse examinations. This evidence is of such weight that the trier of fact could reasonably be of such firm belief or conviction as to conclude that the first factor of R.C. 2151.41.4(E) was established.
In regard to the fourth factor, the evidence reveals that appellant was of the opinion that he was Cynthia's father, but did not take a paternity test until nearly nine years later, failed to visit her while she was in the custody of PCDHS on thirty-seven of forty-three opportunities, became incarcerated and did not communicate with her after January 21, 1998, refused to complete the mandatory psychological and substance abuse examinations, and neglected to improve his inadequate financial condition. Consequently, the fourth factor was satisfied by clear and convincing evidence.
Finally, there was clear and convincing evidence that the eighth factor was met, because the factual record shows that appellant had been incarcerated at least seven times since 1987, one of which was for gross sexual imposition, and that he became incarcerated in June 1998, for DUI for a period of one year, even after PCDHS had discovered that Cynthia had been sexually abused and had removed her from her home. Such evidence is of the nature by which the trier of fact could conclude that there was clear and convincing evidence that appellant's repeated incarcerations prevented him from providing care for Cynthia.
Due to the fact that three of the factors enumerated in R.C. 2151.41.4(E) were satisfied by clear and convincing evidence, when only one need be established, we conclude that appellant's first assignment of error is meritless.
In the second assignment of error, appellant argues that PCDHS did not use reasonable efforts in developing and implementing a case plan designed to preserve the parent-child relationship as directed under R.C. 2151.41.9.
R.C. 2151.41.9(A) requires a trial court to determine whether a children services agency that has removed a child from his or her home has "made reasonable efforts to prevent the removal of the child from his home, to eliminate the continued removal of the child from his home, or to make it possible for the child to return home." The children services agency retains the burden of proving that it has made such reasonable efforts. R.C. 2151.41.9(A).
The facts of this case show that appellant was incorporated into PCDHS's Case Plan in October 1997, when a paternity test proved him to be Cynthia's biological father. At that time, Cynthia had already been removed from the custody of her mother. In order to make it possible for appellant to obtain custody of Cynthia, PCDHS ordered him to undergo a psychological and a substance abuse examination and to otherwise demonstrate that he possessed the willingness and resources to provide a secure and stable home for his daughter. In addition, PCDHS made all necessary referrals. However, despite PCDHS's efforts, appellant decided not to complete either the psychological or substance abuse examination, tested positive for cocaine use in a urine exam, failed to increase his income, did not visit Cynthia thirty-seven of forty-three times, and became incarcerated after the troubles Cynthia experienced in her mother's care and after she was removed from her home. Thus, we conclude that PCDHS made reasonable efforts to develop and preserve the parent-child relationship and appellant's actions caused Cynthia not to be placed into his custody. Therefore, appellant's second assignment of error is not well-taken.
Appellant, in his third assignment of error, contends that the trial court erred in terminating his parental rights and granting permanent custody to PCDHS, because it did not consider all the relevant factors set forth in R.C. 2151.41.4(D). Essentially, appellant claims that the trial court failed to consider whether Cynthia could be placed into the custody of the relatives of either of her parents.
R.C. 2151.41.4(D) requires a trial court to consider the best interests of a child in determining custody issues. As part of this best interests evaluation, the trial court determined that Cynthia had developed strong bonds with her sister, who would be placed for adoption with Cynthia, that she was a special needs child who needed a special environment, that a therapeutic placement was crucial to her well-being, and that no relatives of either of her parents were identified by appellant or her mother as willing or able to meet her special needs or provide a secure placement.
Moreover, R.C. 2151.41.4(D) does not require that a court determine whether a relative of the child would be an appropriate placement, in order to determine the best interests of the child. Also, the trial court concluded that it was in the best interests of Cynthia that she be placed into the permanent custody of PCDHS for the purposes of adoption. Thus, the trial court did not err in terminating appellant's parental rights and granting permanent custody of Cynthia to PCDHS. Therefore, appellant's third assignment of error is without merit.
For the foregoing reasons, appellants assignments of error are not well-taken, and the judgment of the Portage County Court of Common Pleas, Juvenile Division, is affirmed.
CHRISTLEY, J., O'NEILL, J., concur.